# GOVERNMENT OF THE VIRGIN ISLANDS
## v.
## LUIS PARRILLA, Appellant

No. 92-7046

United States Court of Appeals
for the Third Circuit

October 12, 1993

TERRY M. HALPERN, ESQ., United States Attorney, WANDA K. ROBINSON, ESQ., Assistant United States Attorney, CARL F. MOREY, ESQ. (Argued), Special Assistant U.S. Attorney (Office of the United States Attorney), Christiansted, V.I., *for Appellee*

THURSTON T. MCKELVIN, ESQ., Federal Public Defender, PATRICIA SCHRADER-COOKE, ESQ. (Argued), Assistant Federal Public Defender, Christiansted, V.I., *for Appellant*

BEFORE: BECKER, COWEN and ROTH, *Circuit Judges*

## OPINION OF THE COURT

ROTH, *Circuit Judge*

The appellant, Luis Parrilla, was convicted in the District Court of the Virgin Islands on five counts, including armed robbery, assault with a deadly weapon, and assault with intent to commit

mayhem.[1] He appeals solely his conviction on Count VII, assault with intent to commit mayhem. He brings his appeal pursuant to 28 U.S.C. § 1291. He contends on appeal that the statutory definition of mayhem in the Virgin Islands Code, 14 V.I.C. § 1341(b), is facially unconstitutional because it creates a mandatory presumption on the required element of intent to commit mayhem. He also contends that the jury instructions were flawed because the trial judge charged the jurors that they could rely on the statutory presumption of intent. Because we find that section 1341(b) does create an impermissible mandatory presumption, we will reverse Parrilla's conviction on Count VII.

## I.

On the evening of August 11, 1991, Luis Parrilla, together with Wendell Semeina, Pierre Larichere, and five others, went on a robbery spree in and around Christiansted, St. Croix. The particular assault, which gave rise to the mayhem count, was directed at one Joseph Duggan. Duggan related that, while riding his motor scooter, he was run off the road by a group of masked men in a car. Larichere admitted that he was driving the car during the attack on Duggan. Wendell Semeina testified that the group had decided to rob Duggan and tried to block his path with the stolen car in which they were riding. Parrilla was seated in the back seat of the car, behind the passenger seat. Duggan attempted to flee, but in the process he fell off the bike and into the bushes next to the road. While Duggan was trying to roll through the bushes, Parrilla and one of his companions, Papito, fired shots at him. One bullet hit Duggan in the foot. The assailants fled but were subsequently chased by the police and arrested. As a consequence of the shooting, Duggan now walks with a limp.

## II.

Parrilla was charged with assault with intent to commit mayhem as a result of the attack on Duggan and the injury to his foot. The Virgin Islands statute defines mayhem as follows:

(a) Whoever willfully and with intent to commit a felony or to injure, disfigure or disable, inflicts upon the person of another any injury which—

---

[1] At the same time, the jury acquitted Parilla of one count of attempted murder and one count of armed robbery.

(1) seriously disfigures his person by any mutilation thereof;

(2) destroys or disables any member or organ of his body; or

(3) seriously diminishes his physical vigor by the injury of any member organ— shall be imprisoned not more than 15 years.

(b) *The infliction of injury is presumptive evidence of the intent required by subsection (a) of this section.*

14 V.I.C. § 1341 (1992) (emphasis added). The companion code provision involved in this case, 14 V.I.C. § 295(3), under which Parrilla was charged with first degree assault for the attack on Duggan, provides in relevant part:

Whoever—

(3) with intent to commit rape, sodomy, mayhem, robbery or larceny, assaults another—shall be imprisoned not more than 15 years.

At the trial, the district judge gave the following instructions to the jury on the dispositive element of intent to commit mayhem:

Now Count 7, which alleges assault with intent to commit mayhem, requires that you find:

The defendant used or threatened to use unlawful violence upon the person of Joseph Duggan; and

That the defendant seriously disfigured or disabled a member or organ of Joseph Duggan's body, that is, his foot;

Or that the defendant seriously diminished Joseph Duggan's physical vigor by the injury to his foot.

*The infliction of injury is presumptive evidence of intent.*

App. at 104A–105A (emphasis added).

## A.

Because Parrilla did not object to the statutes application or to the jury instructions at trial, we review them for "plain error." Federal Rule of Criminal Procedure 52(b) states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Plain error" analysis requires a case-by-case determination that includes examining factors such as the obviousness of the error, the significance of the interest protected by the rule that was violated, the seriousness of the error in the particular case, and the reputation of judicial pro-

ceedings if the error stands uncorrected—all with an eye toward avoiding manifest injustice." United States v. Thame, 846 F.2d 200, 205 (3d Cir. 1988).

■ Parrilla must show that the error seriously affected substantial rights or compromised the fairness of the trial. United States v. Bey, 736 F.2d 891, 895 (3d Cir. 1984). The error must be of constitutional dimensions or produce a miscarriage of justice. United States v. Frady, 456 U.S. 152, 163 n.14 (1982). Moreover, under the "plain error" doctrine, especially in criminal cases, we may notice errors if they are "obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings." United States v. Atkinson, 297 U.S. 157, 160 (1936).

The Supreme Court has held that the Due Process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship 397 U.S. 358, 364 (1970). "Where intent of the accused is an ingredient of the crime charged, its existence is a question that must be submitted to the jury." Morissette v. United States, 342 U.S. 246, 274 (1952). "[T]he trial court may not withdraw or prejudge the issue by instruction that the law raises a presumption of intent from an act." Id.[2]

■ A statutory presumption that requires the jury to infer from proof of injury a necessary element of the crime charged, i.e., that the defendant intended to commit mayhem upon his victim, is the type of error encompassed by Fed. R. Crim. P. 52(b) because it allows his "conviction upon insufficient proof" of intent. Leary v. United States, 395 U.S. 6, 37 (1969) (warning that courts must scrutinize statutes creating presumptions in criminal cases). Therefore, our review of such an issue in this case is properly exercised.

### B.

The task we must first address then is to determine whether the presumption of intent to commit mayhem is permissive or mandatory. The prosecution argues that the presumption in section 1341(b) is an entirely permissive one because the section allows,

---

[2] The Court noted that: "Even a dog distinguishes between being stumbled over and being kicked." Morissette, 342 U.S. at 252 n.9 (quoting O.W. Holmes, The Common Law 3 (1881) (discussing intent in criminal law chapter)).

but does not require, the trier of fact to infer the attacker's intent to "injure, disfigure or disable" from proof of the infliction of injury on the victim. Parrilla contends to the contrary that the presumption is mandatory because the language of the statute compels the finder of fact to find intent without deliberation thereon. See, e.g., Sandstrom v. Montana, 442 U.S. 510 (1979).

The Supreme Court has instructed us on the methods to employ in evaluating a presumption to determine whether it is permissive or mandatory. In County Court of Ulster County v. Allen, 442 U.S. 140 (1979), the Court considered a facial attack upon a New York statute on the grounds that it impermissibly shifted the burden of proof onto the defendant. In its opinion reversing the grant of habeas corpus, the Court noted that the Court of Appeals for the Second Circuit improperly analyzed the statute on its face as if it were a mandatory presumption, while failing to observe that the New York Court of Appeals had, in fact, determined earlier, 354 N.E.2d 836, 840 (1976), that the statute created a permissive presumption. 442 U.S. at 160. The Court distinguished between permissive and mandatory presumptions and mandated that the constitutionality of the two should be analyzed differently. 442 U.S. at 156–63.

■ The entirely permissive inference or presumption is one which "allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant." Id. at 157. In reviewing permissive presumptions, the Court requires the challenger to demonstrate the presumption's invalidity "as applied to him." Id. The Court explained that a facial attack to a statute on grounds of a permissive presumption will fail if the statute creates only a "permissive inference", leaving the trier of fact free to credit or reject the inference. The application of the statute to a particular case, however, can be successfully challenged if there is no rational way the trier of fact could have made the connection permitted by the inference. Id. If such an irrational result were evident in the verdict, that result might be the product of an improper reliance on the presumption by the jury, without the jury having been convinced beyond a reasonable doubt of the existence of the presumed fact. Such an outcome, a verdict arrived at without satisfactory proof of every element of the offense charged, is a constitutionally impermissible conclusion. See Winship, 397 U.S. at 364.

■ With mandatory presumptions, on the other hand, we are faced with a statutory command that, because one fact is proved, another fact must follow. We look to the language of the statute rather than the evidence at trial or the jury instructions to determine the constitutional validity of the mandatory presumption. A statute creating a mandatory presumption is "[a] far more troublesome evidentiary device" because it may "affect not only the strength of the no 'reasonable doubt' burden" but also, if the presumption is rebuttable, the "placement of that burden." County Court of Ulster County, 442 U.S. at 157. The mandatory presumption "tells the trier that he or they *must* find the elemental fact upon proof of the basic fact . . . ." Id. In effect, the government is spared the burden of having to adduce evidence of the presumed fact at every trial. See Leary, 395 U.S. at 38.

Because the elemental fact is to be accepted as proved without a jury finding of proof, the Court commands us to examine the mandatory presumption "on its face to determine the extent to which the basic and elemental facts coincide." County Court of Ulster County, 442 U.S. at 158. Since the trier of fact is forced to abide by the presumption irrespective of particular facts presented by the prosecutor, the analysis of the mandatory presumption's constitutional validity "is logically divorced from those facts and based on the presumption's accuracy in the run of cases." Id. at 159.

The Supreme Court in Leary expressed the constitutional test for a mandatory presumption as being whether there is a "rational connection" between the proved and the presumed facts. "[A] criminal statutory presumption must be regarded as 'irrational' or 'arbitrary' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." Leary, 395 U.S. at 36 (striking down a presumption allowing a jury to infer from possession of marijuana that defendant knew the marijuana was imported illegally).

■ In addition to assessing the rationality of the link between the proved and presumed facts, the Court also instructs us, in assessing the constitutionality of a mandatory presumption, to give substantial weight to the legislature's determinations underlying the presumption:

The process of making the determination of rationality is, by its nature, highly empirical, and in matters not within specialized

359

judicial competence or completely commonplace, significant weight should be accorded the capacity of Congress to amass the stuff of actual experience and cull conclusions from it.

United States v. Gainey, 380 U.S. 63, 67 (1965) (sustaining a presumption allowing a jury to infer from presence at an illegal still that defendant was "carrying on" the business of a distiller). A court may, however, reevaluate the legislature's determinations establishing presumptions after it has determined that "the legislative record does not apply an adequate basis upon which to judge the soundness of the . . . presumption." Leary, 395 U.S. at 38.

The exact line between a permissive and mandatory presumption may be difficult to draw;[3] even within the category of mandatory presumptions, there are gradations from conclusive to rebuttable.[4] A conclusive mandatory presumption removes the presumed element from the case once the state has proved the predicate facts giving rise to the presumption. A rebuttable mandatory presumption does not remove the presumed element from the case; but nevertheless may require the jury to find the presumed element unless the defendant persuades the jury that such a finding is unwarranted. See Sandstrom v. Montana, 442 U.S. 510, 517–18 (1979).[5] A rebuttable mandatory presumption with a low threshold required by the defendant to counter it, on the other hand, may be close-to-indistinguishable from a permissive presumption. "To the extent that a [mandatory] presumption imposes an extremely low burden of production—e.g., being satisfied by 'any' evidence—it may well be that its impact is no greater than that of a

---

[3] A major source of confusion is the frequent failure of courts and legislatures to specify the impact of a rebuttable criminal presumption on the admissibility of evidence, the burden of going forward with evidence, and the burden of persuasion. See generally David N. Brown, The Constitutionality of Statutory Criminal Presumptions, 34 U. Chi. L. Rev. 141 (1966).

[4] "The class of more or less mandatory presumptions can be subdivided into two parts: presumptions that merely shift the burden of production to the defendant, following the satisfaction of which the ultimate burden of persuasion returns to the prosecution; and presumptions that entirely shift the burden of proof to the defendant." County Court of Ulster County, 442 U.S. at 157 n.16.

[5] This shifting of the burden of proof to the defendant would be constitutionally impermissible under the Due Process Clause. See Sandstrom, 442 U.S. at 521; Francis v. Franklin, 471 U.S. 307, 317 (1985) (citing Patterson v. New York, 432 U.S. 197, 215 (1977)).

permissive inference, and it may be proper to analyze it as such." County Court of Ulster County, 442 U.S. at 157–58 n.16.

Notwithstanding the categorical shadings of presumptions, the placement of the burden of persuasion as a result of a presumption is a constitutional matter. The Court, in Gainey, Leary, and County Court of Ulster County, has provided a framework by which we will analyze section 1341(b)'s presumption. We must first interpret the language of the statute to determine whether the presumption is mandatory or permissive. If we find the presumption is mandatory, we then go on to examine the legislature's reasoning for the presumption, to evaluate the rational connection between the proved and the presumed fact, and to investigate the extent to which the basic and elemental facts coincide. These steps will enable us to determine the constitutional validity of the mandatory presumption.

We have found no Virgin Islands case law to assist us in our evaluation of section 1341(b)'s presumption. The parties do not cite any authority on the question of whether its language creates a mandatory or permissive presumption; nor have we discovered any case on point. Therefore, we are presented with the opportunity to make the first judicial determination of whether section 1341(b)'s presumption is mandatory or permissive.

The language of section 1341(b) states concisely: "The infliction of injury is presumptive evidence of the intent required by subsection (a) of this section [to commit mayhem]." Applied to the facts of this case, this plain statutory language clearly sets up the following presumption: If the government establishes that Duggan's foot was injured by Parrilla's act of shooting at him (the basic fact), then the jury must presume that Parrilla *intended* to commit a felony, that is, to injure, disfigure or disable Duggan (the elemental fact), and Parrilla must be convicted of assault with intent to commit mayhem.

We find that section 1341(b)'s commanding language imposes a mandatory presumption. The statute's presumption of intent creates an inferential strength of guilt through proof of the basic fact of injury that shifts the burden of persuasion on the elemental fact of intent onto Parrilla. It does not, by contrast, merely impose a burden of production on the defendant that, if satisfied through the introduction of "any evidence," allows the presump-

tion to evaporate and to require the jury to convict on the strength of the remaining evidence.[6] See footnote 4, supra.

Because we find section 1341's presumption to be mandatory, we next search the legislative history for any assistance it might provide on assessing the soundness of the presumption. Our review of the legislative record supplies us with only sparse material upon which to judge the mandatory presumption. The only reference we find is the revision note to 14 V.I.C. § 1341 in the annotated code which states that the wording of the section "is patterned upon New York Penal Law § 1400." As originally enacted, New York Penal Law § 1400, entitled "Maiming defined; punishment," provided that "[t]he infliction of the injury is presumptive evidence of the intent." Penal Law § 1400 was, however, later replaced by Penal Law § 120.10 (McKinney 1965), proscribing a crime entitled "Assault in the first degree." By comparison, we find it significant to our analysis that Penal Law § 120.10 excludes entirely its predecessor's provision that "injury is presumptive evidence of intent." Our conclusion is therefore that section 1341's legislative history provides us with no assistance. The revised New York Penal Law § 120.10 indicates, at least impliedly, a perception in New York of an earlier infirmity in Penal Law § 1400's statutory language.

Our next step is to consider the likelihood in the normal course of events that the presumed fact in section 1341 will flow from the proven fact; whether there is substantial certainty that the proven fact of injury is rationally linked to the presumed fact of intent to commit mayhem.

Parrilla argues in support of his position that there is no logical connection between the proven and presumed facts. He stated at oral argument that he did not intend to injure Duggan; rather, he merely intended to frighten and intimidate Duggan by shooting at

---

[6] We cautioned in United States v. Berrigan, 482 F.2d 171 (3d Cir. 1973) that "[w]hile mens rea is certainly within one's control it is not subject to direct proof; it is proved by circumstantial evidence only. More important, it is not subject to direct refutation. It is the subject of inference and speculation." 482 F.2d at 189 n.39. See also Morissette, 342 U.S. at 252 n.9, pointing out that "in American law, 'mens rea is not so readily constituted from any wrongful act' as elsewhere." (quoting Radin, Intent, Criminal, 8 Encyc. Soc. Sci. 126, 127).

him.[7] His argument may be reasonable in light of his companions' testimony that they intended to "go around robbing" that night. In the realm of "circumstances of life as we know them," Parrilla's theory of the case is one reasonable alternative to a theory of an intent to commit mayhem upon Duggan directed by section 1341(b)'s mandatory presumption.[8] Consistent with Parilla's alternate theory, he claims that the application of section 1341(b)'s mandatory presumption violated his due process guaranty because it required the jury to convict him on insufficient proof beyond a reasonable doubt, absent jury deliberation and fact finding on the issue of his intent to commit mayhem. See Leary, 395 U.S. at 37; Winship, 397 U.S. at 364.

Not surprisingly, the government proffers a different theory of the case, arguing that section 1341(b) creates a permissive presumption "by its own language." If only we would consult the dictionary, the government urges, we would discover that:

> [t]he word evidence means "the data on which a conclusion or judgment may be based." Webster's II New Riverside University Dictionary (1984). In a legal setting, the word evidence means "the documentary or verbal statements and materials, objects admissible as testimony in a court of law." Id. The word presumptive means "providing a reasonable basis for acceptance or belief." Id. Thus, the phrase "presumptive evidence" [contained in section 1341(b),] means data that are admissible in court that provide a reasonable basis for a conclusion but that do not require the conclusion.

---

[7] Parilla argues that the state did not even prove the basic fact to which the presumption is tethered here, i.e. that *his* shot caused Duggan's injury. Section 1341 imposes criminal liability upon "(a) "*Whoever* willfully and with intent to commit a felony or to injure, disfigure or disable, *inflicts upon the person of another* any injury . . . ." The uncontroverted evidence at trial established that two men, Parrilla and Papito, both shot at Duggan. See Trial Transcript of Nov. 11, 1991 at 62–64; Trial Transcript of Nov. 20, 1991 at 183. We will not disturb the jury's finding of fact on the issue of proof of the basic fact. We note, however, our concern about the inequity which might result by requiring a presumed fact to follow from a basic fact so tenuous in its factual foundation.

[8] Uncontroverted evidence of two people shooting at Duggan without proof of whose shot hit the victim provides an additional reasonable alternative that illustrates the statute's constitutional weakness in that the mandatory presumption may allow the jury, where only shooter A is charged, to impute shooter B's intent to shooter A.

Government's Br. at 12. The government concludes that on the basis of this definition, section 1341(b)'s presumption allows but does not require the trier of fact to infer Parrilla's intent to "injure, disfigure or disable" from proof of the infliction of injury on Duggan.[9]

■ We disagree with the government's proffered theory of the case, relying solely upon the dictionary. Resort to a dictionary definition alone does not incorporate the safeguards of the "rationality" test inherent in the Supreme Court's analyses of criminal statutory presumptions.[10] The Court directs us to analyze a presumption's rationality using empirical data and common sense and

---

[9] The government, in urging that the presumption is permissive, contends that, even if the "presumptive evidence" jury instruction was error, it was harmless error because there was ample evidence of Parilla's intent to commit mayhem and because, when the jury instructions are read as a whole, they contain ample reference to the presumption of innocence, the necessity of proof by the government of each element of each offense beyond a reasonable doubt, and the requirement that specific intent be proved for each offense. We disagree with the government's argument.

First, the individual instruction on assault in the first degree, mayhem, unlike the other two individual instructions given in this case on assault in the first degree, robbery, contained no specific instruction on the element of intent except for the reference, recited verbatim from the statute, that "[t]he infliction of injury is presumptive evidence of the intent." App. at 105A. Even if section 1341(b)'s presumption were a permissive rather than a mandatory one, arguably this instruction would still be erroneous. See Rock v. Zimmerman, 959 F.2d 1237, 1248–49 (3d Cir. 1992) ("we believe it far more likely that when considering the evidence regarding Rock's intent the jury applied the instructions specifically directed to that subject matter rather than the more general instructions." (citing Humanik v. Beyer, 871 F.2d 432, 442 (3d Cir. 1989))). Moreover, the Court has held that a general instruction that the accused is presumed innocent until proven guilty and that the state has the burden of proving the elements of the crime charged beyond a reasonable doubt "is not rhetorically inconsistent with a conclusive or burden-shifting presumption." Sandstrom, 442 U.S. at 518 n.7.

Nevertheless, in view of the fact that we find section 1341(b)'s presumption mandatory and the statute consequently facially unconstitutional, we do not need to weigh the evidence or the instructions as a whole. County Court of Ulster County, 442 U.S. at 157–60.

[10] See Sandstrom, 442 U.S. at 517 ("Given the common definition of 'presume' as 'to suppose to be true without proof,' Webster's New Collegiate Dictionary 911 (1974), and given the lack of qualifying instructions as to the legal effect of the presumption, we cannot discount the possibility that the jury may have interpreted the instruction in either of two more stringent ways.").

not merely using the dictionary. Absent an express statutory provision or a consistent judicial interpretation establishing the rationality of the connection, the jury should not be directed to find a fact necessary for criminal conviction which has neither been proved nor is substantially certain and reasonably expected to flow from the facts which have been proved.

■ Although there may be situations in which the infliction of injury on a victim will be probative of the assailant's intent to commit mayhem, Parrilla has demonstrated that additional motivating forces may also exist. For example, evidence of an injury may be the result of an assailant's intent to harass or intimidate the victim. Intimidation, although not commendable, is not mayhem. Proof of injury does not limit the fact finder to a conclusion that the assailant intended to commit mayhem upon the victim. Under these circumstances, then, section 1341(b)'s command to find intent to commit mayhem upon proof of an injury is constitutionally infirm; there are other intended objectives which are likely to exist.

In construing section 1341(b)'s language that "[t]he infliction of the injury is presumptive evidence of the intent required by subsection (a)," the inference can be said to be "so strained as not to have a reasonable relation to the circumstances of life as we know them." Tot v. United States, 319 U.S. 463, 468 (1943) (striking down a presumption allowing a jury to infer from possession of a firearm that the defendant unlawfully received the firearm in an interstate transaction). The Court in Tot, in striking the statute, considered the alternative possibilities to be drawn about the presumed fact from the proven fact, see id. at 468, and concluded that there was insufficient rational connection between possession of a firearm and interstate receipt. Therefore, the Court held that the presumption was an unconstitutional deprivation of due process. We agree with Parrilla that we should reach the same conclusion in the present case based on the existence of alternative rational theories of intent.

Finally, we conclude with the admonition that presumptions of intent are particularly hazardous. The Supreme Court has recognized the problem raised by presumptions of intent in criminal cases:

A conclusive presumption which testimony could not overthrow would effectively eliminate intent as an ingredient of the

offense. A presumption which would permit but not require the jury to assume intent from an isolated fact would prejudge a conclusion which the jury should reach of its own volition. A presumption which would permit the jury to make an assumption which all the evidence taken together does not logically establish would give to a proven fact an artificial and fictional effect. In either case, this presumption would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime.

Morissette, 342 U.S. at 275. Therefore, the Court concluded, as we do here, that "presumptive intent has no place in this case." Id. See also Patterson v. New York, 432 U.S. at 215 ("[S]hifting of the burden of persuasion with respect to a fact which the State deems so important that it must be either proved or presumed is impermissible under the Due Process Clause." (citing Mullaney v. Wilbur, 421 U.S. 684, 698–701 (1975) (declaring unconstitutional a mandatory rebuttable presumption that shifted to the defendant a burden of persuasion on the question of intent))). Moreover, because it is "intent" which is being presumed under section 1341, we find unconvincing the dissent's comparison of the section 1341 presumption to the New York statute, inferring possession of a weapon, as set out in County Ct. of Ulster County.

### III.

■ We hold, therefore, that 14 V.I.C. § 1341(b) creates a mandatory presumption that is unconstitutional. There is a lack of substantial assurances that the presumed fact that Parrilla intended to commit mayhem upon Duggan is more likely than not to flow from the basic fact that Duggan's foot was injured. In analyzing a mandatory presumption, it is irrelevant that there is evidence in the record other than the presumption to support a conviction; because the trier of fact is required to abide by the presumption, an unconstitutional failure of proof of every element of the offense may result. For the foregoing reasons, we will reverse Parrilla's conviction on Count VII and will vacate his sentence of imprisonment for 15

years imposed on that Count.[11] We will remand this case to the district court to determine, in view of the concurrent sentences, including the sentence of 20 years imposed on the first degree robbery count, whether it desires to resentence Parrilla on the remaining four counts of conviction.

BECKER, *Circuit Judge,* dissenting

Although I believe that the Virgin Islands mayhem statute, 14 V.I.C. § 1341, was unconstitutional as applied to the defendant, Luis Parrilla, I would affirm his conviction because I am satisfied beyond a reasonable doubt that this error did not contribute to the verdict. However, because harmless error analysis does not apply unless the statute in question is facially valid, I must first address the majority's conclusion that § 1341 is not. Since I conclude there is a limiting construction of § 1341 that renders the statute constitutional in certain circumstances, I would hold that § 1341 is facially valid. I conclude that the district court's error was harmless because I believe that on this record no reasonable fact finder could decide that Parrilla did not intend to inflict injury on James Duggan.

I.

It is well recognized that a "facial challenge to a legislative Act is . . . the most difficult challenge to mount successfully, since the challenger must establish that *no* set of circumstances exists under which the Act would be valid." United States v. Salerno, 481 U.S. 739, 745, 107 S. Ct. 2095, 2100 (1987) (emphasis added). In my view, Parilla's argument that § 1341 is facially void is without merit because there is a limiting construction of § 1341 which creates a permissive rather than a mandatory presumption.

As the majority has explained, Parrilla was convicted of assault with intent to commit mayhem in violation of 14 V.I.C. § 295. Section 295 incorporates the substantive mayhem statute, 14 V.I.C. § 1341, which defines mayhem as the willful act of disfiguring or disabling another with the intent to injure, disfigure, or disable. However, with respect to the intent requirement, § 1341(b) states

---

[11] Because we are holding the presumption, but not the statute itself, unconstitutional, the United States Attorney is not precluded from retrying Parilla on this count as long as the presumption is excluded from consideration in that prosecution.

that "[t]he infliction of injury is presumptive evidence of the intent required by subsection (a) of this section."

The Supreme Court has held that a statute essentially identical to § 1341 is constitutional on its face. In County Ct. of Ulster County v. Allen, 442 U.S. 140, 99 S. Ct. 2213 (1979), the Court upheld the constitutionality of a New York statute which provided that a defendant's presence in an automobile, other than one that was stolen or a commercial vehicle such as a taxicab, is "presumptive evidence" that any weapons found in the automobile were in the defendant's possession, except when another occupant of the car had the weapon on his or her person.[1] See id. at 142, 99 S. Ct. at 2217. The Court held that this statutory presumption was permissive when given the limiting construction read into the statute by the trial court in its jury instructions. See id. at 160–62 & n.20, 99 S. Ct. at 2226–27 & n.20.

The instructions explained that if the jury found that the defendants were in the car when the weapons were found, this created presumptive evidence of their possession of the weapons. The court instructed the jurors that this meant that they:

> may infer and draw a conclusion that such prohibited weapon was possessed by each of the defendants who occupied the automobile at the time when such instruments were found. The presumption . . . is effective only so long as there is no substantial evidence contradicting the conclusion flowing from the presumption, and the presumption is said to disappear when such contradictory evidence is adduced. *The presumption . . . need not be rebutted by affirmative proof or affirmative evidence but may be rebutted by any evidence or lack of evidence in the case.*

Id. at 161 n.20, 99 S. Ct. at 2227 n.20 (emphasis added; citations and internal quotations omitted). The Court stated that the construction of the New York statute reflected in the jury charge "gave rise to a permissive inference available only in certain circumstances, rather

---

[1] In relevant part, the statute at issue in County Ct. of Ulster County stated:

> The presence in an automobile, other than a stolen one or a public omnibus, of any firearm . . . is *presumptive evidence of its possession by all persons occupying such automobile* at the time such weapon, instrument or appliance is found, except . . . (a) if such weapon . . . is found upon the person of one of the occupants therein . . . .

N.Y. Penal Law § 265.15(3) (McKinney 1967) (emphasis added).

than a mandatory conclusion of possession, [which] could be ignored by the jury even if there was no affirmative proof offered by the defendants in rebuttal." 442 U.S. at 161, 99 S. Ct. at 2226–27. The Court held that the New York statute was not, therefore, unconstitutional on its face. See id. at 162–63, 99 S. Ct. at 2227.

Like the statute at issue in County Ct. of Ulster County, § 1341(b) provides that proof of the basic fact is "presumptive evidence" of the elemental fact. See 14 V.I.C. § 1341(b). The difference between the two statutes is only that they deal with different issues—the New York statute with an inference of possession of weapons in a car and the Virgin Islands statute with an inference of intent to maim. In my view, the same limiting construction which made the New York statute facially valid in County Ct. of Ulster County is available to limit § 1341 and thus render it constitutional on its face. More specifically, the "presumptive evidence" created by the government's proof of infliction of the injury under § 1341(b) need not be construed to create an irrebutable presumption that the defendant intended to injure the victim. Rather, as in County Ct. of Ulster County, the statute can and should be construed to create a presumption that may be rebutted by the defendant through the introduction of any evidence or even by pointing to an absence of evidence on the government's behalf.[2]

Under such an interpretation, a defendant is under no obligation to introduce affirmative evidence that he or she did not intend or desire to injure the victim. As in County Ct. of Ulster County, such a construction would render § 1341(b) facially constitutional, as it

---

[2] As I discuss below, see infra page 21, the jury instructions here, unlike those at issue in County Ct. of Ulster County, did not provide a limiting construction of the statute. While I consider that fact to be highly relevant to Parilla's as-applied challenge, I do not believe that it renders § 1341 void on its face. The Court in County Ct. of Ulster County instructs courts to look at the trial court's jury instructions in determining whether the defendant was subjected to a mandatory or a permissive presumption. See 442 U.S. at 157 n.16, 99 S. Ct. at 2225 n.16. Given general principles of constitutional analysis with regard to facial challenges, I understand the Court to mean by this statement that courts should look to the jury charge utilized in the case as it may suggest potential limiting constructions of the statute. However, while the failure of the trial court to provide a limiting construction in its jury charge is always relevant to an as-applied challenge, this failure does not by itself render a statute void on its face as there may nonetheless be an available limiting construction. Thus, I do not believe the omission of a limiting construction in the trial court's jury charge to be dispositive with respect to the facial validity issue.

would create only a permissive presumption. It may be that when the presumption created by § 1341(b) is limited by the narrowing construction just described it still establishes what might *technically* be called a "mandatory" presumption. However, as the Court has made clear in County Ct. of Ulster County, 442 U.S. at 157 n.16, 99 S. Ct. at 2225 n.16, when a mandatory presumption places such a minimal burden on the defendant, it is the functional equivalent of a permissive presumption, and should be analyzed as such.

Because we serve here as the equivalent of a state supreme court (for the Virgin Islands), see 48 U.S.C. § 1612, we are empowered to impose our own limiting construction upon § 1341 to render it constitutionally valid. In addition, it is our duty to construe a statute as constitutional when such a construction is fairly possible. See, e.g., United States v. Security Indus. Bank, 459 U.S. 70, 78, 103 S. Ct. 407, 412 (1982); International Ass'n of Machinists v. Street 367 U.S. 740, 749–50, 81 S. Ct. 1784, 1790 (1961). I therefore believe that the majority incorrectly chooses not to read into § 1341 the limiting construction sanctioned by the Court in County Ct. of Ulster County which would make it facially valid.

Although in my view § 1341 is valid on its face, I conclude that it was unconstitutionally applied to Parrilla. Unlike the trial court in County Ct. of Ulster County, which explained to the jurors that any presumption created by the government's evidence could be easily rebutted by the defendants, the district court here merely recited the bare language of § 1341 in its jury charge.[3] Although at the outset of its instructions, the district court did explain to the jury: (1) the reasonable doubt standard; (2) that the government bore the burden of proof on all elements of each crime charged; and (3) the definition of specific intent, this generalized preliminary discus-

---

[3] With respect to the conviction Parrilla has challenged, the district court instructed the jury:

Now Count 7, which alleges Assault with Intent to Commit Mayhem, requires that you find:

The defendant used or threatened to use unlawful violence upon the person of Joseph Duggan; and that the defendant seriously disfigured or disabled a member or organ of Joseph Duggan's body, that is, his foot; or that the defendant seriously diminished Joseph Duggan's physical vigor by the injury to his foot. The infliction of injury is presumptive evidence of intent.

[App. at 64]

sion did not suffice to explain to the jury that § 1341 created a permissive presumption only.

Without an explanation that the presumptive evidence of intent could be rebutted by Parrilla, the jurors may have believed either that they were automatically required to presume Parrilla had intended to injure Duggan once the government had established that Parrilla had inflicted the injury, or that the presumption could only be rebutted by the introduction of *substantial* contrary evidence by Parrilla. See Sandstrom v. Montana, 442 U.S. 510, 517, 99 S. Ct. 2450, 2455–56 (1979). Under either interpretation, the burden of persuasion on the intent element was effectively shifted to Parrilla due to the district court's failure to apply a limiting construction to § 1341 in its jury instructions. See Id. at 517–18, 99 S. Ct. at 2454–57.[4]

## II.

Although I would hold that § 1341 was unconstitutionally applied to Parrilla, I conclude his conviction should be affirmed because the error was harmless. In Rose v. Clark, 478 U.S. 570, 106 S. Ct. 3101 (1986), the Court held that when jury instructions create an impermissible mandatory presumption, courts must apply harmless error analysis under Chapman v. California, 386 U.S. 18, 87 S. Ct. 824 (1967). See 478 U.S. at 580–81, 106 S. Ct. at 3107.

To the extent there is potentially conflicting language in County Ct. of Ulster County, it is distinguishable. In County Ct. of Ulster County, the Court stated that when a presumption is deemed mandatory, the conviction must be reversed regardless of the record evidence supporting the conviction. See 442 U.S. at 159–60, 99 S. Ct. at 2226. However, a close reading of the case in light of Rose v. Clark reveals that this statement applies only in situations in which the statute under which the defendant was convicted is found facially void due to its imposition of a mandatory presumption. In all other situations in which a defendant is subject to a mandatory presumption, harmless error analysis applies.

As I have explained, see supra Part I, facial unconstitutionality should not present a problem on this appeal. Moreover, based on

---

4 In addition, even if some jurors did believe that the instructions imposed a permissive presumption, as long as other jurors reasonably may have believed otherwise, the instructions were constitutionally infirm. See Sandstrom, 442 U.S. at 518, 99 S. Ct. at 2456–57.

the record evidence, I believe that no rational jury could have concluded that, although Parrilla caused Duggan's injury by shooting at him, he did not intend to harm him. For this reason, I would hold that the mandatory presumption applied to Parrilla through the district court's jury instruction was harmless.

As a general matter, the evidence adduced at trial along with the jury's unchallenged convictions of Parrilla on the other counts,[5] establish that Parrilla, along with several others, set out on spree of violent armed robberies on the night he shot Duggan. The evidence at trial demonstrated that quite a number of the incidents were violent—e.g., one victim was hit in the head with the butt of a rifle during the robbery—and were often initiated by Parrilla. With respect to the conviction at issue here, assault with intent to commit mayhem, 14 V.I.C. § 295 (incorporating § 1341), the evidence adduced at trial came from the victim, James Duggan, and from a friend of Parrilla's who was involved in the robberies, Wendell Simeina.

Duggan testified that he had pulled over to the side of the road with his motor scooter and that when a car drove up, he got on his scooter and attempted to drive away. However, before he could drive away, according to Simeina, the occupants of the car told him to "freeze," and Parrilla and another man, Papito, began to shoot at Duggan. Duggan testified that he was hit by a bullet and fell off his bike. He further testified that he then rolled in the grass in an effort to escape his assailants, but as he was rolling away, the shooting continued. At this time, Duggan heard one of the assailants say "Get him" or something to that effect. He was able to roll into a bush where he kept still, hoping to convince the men that he had died. That was the end of Duggan's contact with Parrilla, Simeina, and the others, who eventually left the scene.

In my view, no rational fact finder could have concluded that Parrilla did not intend to injure Duggan. The majority contends that the jury could have believed that Parrilla was only trying to scare Duggan, not to hurt him. See Majority Typescript at 11. I find this theory implausible given the evidence. The testimony established that Parrilla repeatedly fired at Duggan, even after he had

---

[5] In addition to the conviction Parrilla has challenged on appeal, the jury convicted Parrilla of two counts of assault with a deadly weapon with intent to commit robbery, and one count of armed robbery.

been hit and was rolling away to escape from Parrilla and the others, undermining the claim that Parrilla was merely trying to frighten Duggan. At this point, Duggan was clearly petrified. Given Parrilla's repeated use of deadly force against Duggan, I fail to see how a reasonable fact finder could have concluded that he did not intend to maim Duggan. Thus, in my view, the fact that the jury instructions erroneously imposed a mandatory presumption regarding Parrilla's intent to injure Duggan was harmless beyond a reasonable doubt. See Chapman, 386 U.S. at 24, 87 S. Ct. at 828.

The majority contends that there was only tenuous evidence that Parrilla's shot caused Duggan's injury because there was testimony that both Parrilla and one of his confederates, Papito, fired shots at Duggan. See Majority Typescript at 11 n.7. The majority thus argues that there was at best weak evidence supporting the basic fact—that Parrilla inflicted Duggan's injury—which gave rise to the presumption that Parrilla intended to harm Duggan under the unconstitutional application of § 1341. The majority submits that this is another reason why Parrilla's conviction should be reversed.

In my view, it is irrelevant that both Parrilla and Papito shot at Duggan so that we cannot know whose bullet actually injured him. Parrilla was convicted for assault with intent to commit mayhem, which requires proof that Parrilla assaulted Duggan and intended to commit mayhem against him. See 14 V.I.C. § 295. It does *not*, however, require proof that Parrilla *actually* injured Duggan.

It is true that the mandatory presumption applied to Parrilla was based on the premise that Parrilla had himself inflicted injury on Duggan, a fact which was not, as the majority contends, established beyond a reasonable doubt. However, harmless error analysis involves a review of the whole record to see whether a rational fact finder could have concluded that Parrilla did not have the requisite intent even if the impermissible mandatory presumption had *not* been applied. Thus, the fact that the constitutionally infirm presumption applied to Parrilla relied on the unproven fact that Parrilla had injured Duggan is inconsequential to the harmless error analysis. My conclusion that a reasonable jury could not have concluded that Parrilla did not intend to injure Duggan thus stands regardless of whether Parrilla actually hit Duggan or not.

Therefore, although in my view the district court erred when it applied § 1341 in a way that imposed a mandatory presumption on the jury, this error was harmless given the evidence adduced at trial. I thus respectfully dissent.