**In re David WARNER, Appellant.**

No. 04–FM–175.

District of Columbia Court of Appeals.

Argued Oct. 6, 2005.
Decided Aug. 10, 2006.

Kyle A. McGonigal, appointed by the court, for appellant.

Janice Y. Sheppard, Assistant Attorney General, with whom Robert J. Spagnoletti, Attorney General for the District of Columbia, Edward Schwab, Deputy Attorney General, and Rosalyn Calbert Groce, Chief, Juvenile and Criminal Section, were on the brief for appellee.

Before RUIZ and REID, Associate Judges, and SCHWELB, Senior Judge.*

REID, Associate Judge:

Following a bench trial, appellant David Warner was found guilty of a single count of criminal contempt for failure to comply with a court order to pay child support, in violation of D.C.Code § 46–225.02 (2001).[1] He contends that the presumption of willfulness created by D.C.Code § 46–225.02 violates the Due Process Clause of the Fifth Amendment to the Constitution of the United States. He also maintains that there was insufficient evidence beyond a reasonable doubt to find him guilty of criminal contempt. We hold that D.C.Code § 46–225.02 does not unconstitutionally shift the burden of proving willful-

---

* Judge Schwelb was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on June 24, 2006.

1. He was sentenced to 180 days in jail, and ordered to pay $50.00 into the Victims of Crime Compensation fund.

ness from the government to the defendant; nor did the trial court shift the burden in this case. We further hold that under § 46–225.02, the defendant bears the burden of production, or the presentation of evidence showing an inability to pay, but that, as usual, the government bears the burden of persuasion, that is, the burden of proving willfulness as an element of criminal contempt. Because the government sustained its burden of proving willfulness under the statute, and since the evidence was sufficient to permit the trial court to find beyond a reasonable doubt that Mr. Warner voluntarily impaired his ability to comply with the court order to pay child support, and thus was guilty of contempt under § 46–225.02, we affirm the judgment of the trial court.

## FACTUAL SUMMARY

The government presented evidence showing that Mr. Warner was ordered to pay $118.60 bi-weekly in child support but, as established by seven prior civil contempt findings, he failed to make the required payments between 1990 and 2002.[2] In addition, without objection, the trial court admitted into evidence court child support payment records evidencing: (1) a $38,010.22 arrearage in child support payments by Mr. Warner; (2) two payments which he made on December 12, 2003 totaling $200; and (3) a payment made by him on April 15, 2002 for $64.06.

To rebut the government's evidence and show his inability to make the court-ordered child support payments, Mr. Warner testified in his own behalf. He stated that he is a high school graduate and worked from 1980 to 1989 at the District of Columbia Department of Recreation. While he was employed, money was regularly taken from his checks for child support payments at that time. In 1990, however, he was terminated from the Department of Recreation and began to look for other work. Mr. Warner explained that he "did back and forth [ ] jobs." He has been denied some jobs "due to [his] background check," which revealed his conviction of a crime.[3] He introduced exhibits (a "book" showing applications for jobs, a letter denying employment and tax forms; and a letter concerning a job he commenced the week before his testimony) to demonstrate his efforts to find work. He stated that he was currently employed at an apartment complex, earning $7.50 an hour for approximately sixteen hours of work a week. In addition, Mr. Warner indicated that he lives with and cares for his blind mother.

In its cross-examination, the government sought to establish that Mr. Warner voluntarily impaired his ability to pay by voluntary unemployment or underemployment. In response to the government's questions, Mr. Warner acknowledged that he was released from his incarceration in January 2003 on a civil contempt finding for failure to pay child support. He could not recall when or how exactly he was employed prior to the incarceration. He was asked, "[i]n 2002, did you work prior to November when you [were] incarcerated for contempt," and initially responded, "[h]ard to remember." When confronted with an unidentified document showing

2. The government asked the trial court to take judicial notice of the permanent support order, and also the seven findings of civil contempt dated June 13, 1990, October 29, 1992, October 13, 1994, February 7, 1996, July 1, 1998, October 26, 2000, and November 19, 2002. Defense counsel voiced no objection.

3. On cross-examination, he denied that he had a criminal conviction, but admitted that he "was locked up for marijuana" in 1985, before stating that he "didn't get locked up." Apparently there is a 1985 conviction on his record, which Mr. Warner eventually acknowledged.

that he "worked from June 2002 to February 2003 at Day Care, Inc.," Mr. Warner stated that he "[did not] remember." Nevertheless, he filed an income tax return for 2002 (he maintained that his "aunt filed [his] taxes for [him]"), and his tax refund "was intercepted for child support." Although Mr. Warner had indicated on an employment application that he was employed from March 2003 to August 2003 with the Montgomery County Government, at trial he claimed that he only worked "two days at Park[s] and Planning." He asserted that he listed Montgomery County government on his application "just to get a job" and that "everybody ... [does] false things on the application."

Finally, Mr. Warner was asked about his physical ailments on cross-examination, including his asthma and a surgically removed knee cap. Mr. Warner explained that his knee "prevent[ed][him] from standing a long period of time" and "sometimes" precluded him from working. He did not have medical documentation showing that his asthma prevented him from working, but he declared that he uses "Albuterol" to manage his asthma.

The trial court observed that Mr. Warner "[has] seven prior civil contempt findings ... for failing to pay child support." The trial judge found that Mr. Warner owed "$38,000 worth of child support," and that he is "able to work." Moreover, the court determined that Mr. Warner "worked for a period of times (sic) in the 80's consistently and throughout the 90's and the year 2000, this decade inconsistently." The court added that "while [Mr. Warner's] prior conviction so long ago may have prevented one employer from hiring [him], there's no record to indicate that that is the thing that holds him back. He has work." Furthermore, the court discredited Mr. Warner's testimony, saying: "he has no problem lying on [his] applica-

tion for employment. So, how am I going to believe him here today when he will do whatever it takes to do whatever he wants to do?" Based on these findings and the credibility determination, the court concluded that: "The government has established knowledge and willfulness beyond a reasonable doubt and therefore I find him guilty of criminal contempt." With respect to its finding of "willfulness" the court stated:

> Willfulness, under the statute, simply is that knowledge of the child support ordered and failure to pay. But in this [case] you have more. You have seven prior contempts ... in enforcing child support but he still continued not to pay. A long history of not paying child support to the tune of $38,000. And he clearly, in the Court's view, from the records, is able to work.

### ANALYSIS

Mr. Warner contends that his "conviction [of criminal contempt] pursuant to D.C.Code § 46–225.02 is improper and should be reversed as it violates due process." He argues that the statutory presumption set forth in § 46–225.02(d) unconstitutionally "requires [him] to carry the burden of persuasion on an element of the charge and effectively reduces the government's ultimate burden of proof" below the reasonable doubt standard. The government argues that D.C.Code § 46–225.02(d) "does not violate due process because the statute does not impermissibly shift the burden of proof to [Mr. Warner]." Rather, once the government establishes the elements of the offense, the statute allows the obligor to rebut the presumption of willfulness by presenting evidence that the failure to pay was the result of incarceration, hospitalization or disability, or other circumstance. Therefore, the statute "merely places the burden on the

obligor to present an affirmative defense to the presumption of willfulness," which is "constitutionally permissible."

D.C.Code § 46–225.02(a)[4] states, in pertinent part, that: "The Mayor or any party who has a legal claim to any child support may initiate a criminal contempt action for failure to pay the support by filing a motion in the civil action in which the child support order was established . . . ." Section 46–225.02(b)(1) specifies a range of actions—from incarceration to ordering rehabilitation programs—that a trial court may take "[u]pon a finding by the court that an obligor has willfully failed to obey any lawful order of child support." Mr. Warner challenges the constitutionality of § 46–225.02(d) which provides:

> For purposes of this section, failure to pay child support, as ordered, shall constitute prima facie evidence of a willful

violation. This presumption may be rebutted if the obligor was incarcerated, hospitalized, or disabled during the period of nonsupport. These circumstances do not constitute an exhaustive list of circumstances that may be used to rebut the presumption of willfulness.

■■■■ Our standard of review in the type of case before us has been articulated previously. "On appeal of a finding of criminal contempt, [this Court] must view the evidence in the light most favorable to sustaining the judgment." *Rogers v. Johnson*, 862 A.2d 934, 936 (D.C.2004) (citing *In re Vance*, 697 A.2d 42, 44 (D.C.1997) (other citations omitted)). We review a challenge to the constitutionality of a statute *de novo*. *See Beeton v. District of Columbia*, 779 A.2d 918, 921 (D.C.2001) (quoting *Jemison v. National Baptist Con-*

---

4. D.C.Code § 46–225.02 provides in full:

(a) The Mayor or any party who has a legal claim to any child support may initiate a criminal contempt action for failure to pay the support by filing a motion in the civil action in which the child support order was established.

(b) (1)Upon a finding by the court that an obligor has willfully failed to obey any lawful order of child support, the court may:

(A) Commit the obligor to jail for a term not to exceed 180 days;

(B) Order the obligor to participate in a rehabilitative program, if the court determines that participation would assist the obligor in complying with the order of child support and access to such program is available;

(C) Order the obligor to accept appropriate available employment or participate in job search and placement activities; or

(D) Place the obligor on probation under such conditions as the court may determine and in accordance with the provisions of the criminal procedure law.

(2) The court may direct that an obligor's commitment may be served upon certain specified days or parts of days. The court may suspend all or part of a sentence and may, at any time within the term of the

sentence, revoke the suspension and commit the obligor for the remainder of the original sentence. A period of commitment shall not prevent the court from committing the obligor for a subsequent failure to comply with an order of child support.

(3) For the purposes of paragraph (1)(B) of this subsection, the term "rehabilitative program" shall include work preparation and skill programs, non-residential alcohol and substance abuse programs, and educational programs.

(c) The court shall order the obligor to pay the petitioner's attorney fees as well as the court costs, unless good cause can be demonstrated on the record against this result.

(d) For purposes of this section, failure to pay child support, as ordered, shall constitute prima facie evidence of a willful violation. This presumption may be rebutted if the obligor was incarcerated, hospitalized, or disabled during the period of nonsupport. These circumstances do not constitute an exhaustive list of circumstances that may be used to rebut the presumption of willfulness.

(e) The court shall not deny any request for relief pursuant to this section unless the facts and circumstances constituting the reasons for its determination are set forth in a written memorandum of decision.

*vention, USA, Inc.,* 720 A.2d 275, 281 (D.C. 1998) (internal quotations and other citations omitted)).

■■■■ When we interpret statutes, we look first to the plain and ordinary meaning, and read them in light of the statute as a whole. *See James Parreco & Son v. Rental Hous. Comm'n,* 567 A.2d 43, 45 (D.C.1989). "The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he [or she] has used." *Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 753 (D.C.1983) (citations omitted). "We must be [ ] mindful that our interpretation is not at variance with the policy of the legislation as a whole...." *Jeffrey v. United States,* 878 A.2d 1189, 1193 (D.C.2005).

In construing the language of the statute before us, we note that the Council chose not to rely on existing contempt authority, such as D.C.Code § 11–944 (2001),[5] but rather inserted a new contempt provision directly in the child support enforcement statute. The government has the burden of proving a willful failure on the part of the obligor to pay child support in accordance with a lawful court order. D.C.Code § 46–225.02(b)(1). But the District's legislature created a presumption specifying that the government's proof of "failure to pay child support, as ordered, shall constitute prima facie evidence of a willful violation" of the court order. D.C.Code § 46–225.02(d). However, the obligor may rebut that presumption by introducing evidence of special circumstances such as "incarcerat[ion], hospitaliz[ation], or disab[ility]." *Id.*

In *Rogers, supra,* we were presented with our first opportunity to interpret

§ 46–225.02, a statute which took effect on March 6, 2002, and which the Council of the District of Columbia enacted in an "effort[ ] to improve its rate of collecting child support payments." *Id.* at 936. According to the legislative history of the statute, it "is designed to punish and deter the willful failure of non-[ ]custodial parents to comply with an order to pay child support." COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON THE JUDICIARY, REPORT ON BILL 14–26, THE "CHILD SUPPORT ENFORCEMENT AMENDMENT ACT OF 2001," July 27, 2001, at 1. In that regard, the statute "complements existing civil remedies by adding a criminal contempt sanction for those who choose not to meet their legal parental obligations." *Id.* The statute is aimed at "the truly recalcitrant obligor." *Id.* at 3.

We determined in *Rogers* that the government presented "a prima facie case that [appellant's] conduct was 'willful' under [D.C.Code] §§ 46–225.02(b)(1) and 46–225.02(d)" because it "demonstrated that [the appellant] was obligated to pay child support to [the mother of his three children], that he was aware of his obligations under the support order, and that he had repeatedly failed to make the required payments." *Id.* at 937. Thus, in accordance with the plain meaning principle of statutory construction, and consistent "with the policy of the legislation as a whole," *Jeffrey, supra,* 878 A.2d at 1193, we identified the following elements of a § 46–225.02 criminal contempt action for failure to pay child support: (1) the existence of a court order obligating the defendant to pay child support; (2) the defendant's knowledge of his obligation to pay child support in accordance with the court

---

5. *See Fields v. United States,* 793 A.2d 1260 (D.C.2002); *Swisher v. United States,* 572 A.2d 85 (D.C.1990); *In re Thompson,* 454 A.2d 1324 (D.C.1982); *In re Gorfkle,* 444 A.2d 934 (D.C.1982).

order; (3) the defendant's failure to make the required payments; and (4) the defendant's failure to make the required payments is willful. *See* § 46–225.02(b)(1). We also recognized the presumption of willfulness which is contained in the first sentence of § 46–225.02(d), and explained how that presumption works in terms of the burden of proof:

> Once the government has established a *prima facie* case that [the defendant] willfully violated the child support order, it was incumbent on [the defendant] to rebut the presumption that his conduct was willful by showing some "circumstances" which prevented him from being able to meet his obligations, *i.e.*, that he was incarcerated, hospitalized, or disabled. D.C.Code § 46–225.02(d). As we said in *Raymond v. United States*, 396 A.2d 975, 977 (D.C.1979), a defendant's "failure to rebut a prima facie case could result in an adverse decision [to him or her]." Indeed, "the [trial court could] find the government proved [an] element [of the crime] beyond a reasonable doubt, absent a countervailing explanation by the defendant." *Id.* at 977.

*Rogers, supra*, 862 A.2d at 937–38. In *Raymond*, which concerned a willful failure to appear in court, in violation of the District of Columbia Bail Reform Act (then codified at D.C.Code § 23–1327 (1973)), we discussed the burden of proof under that statute:

> [T]he Act does not shift the burden to defendant to disprove the presumed existence of an element of a crime. It merely creates, for the trier of fact, a permissible inference of willfulness based on a showing of notice and a failure to appear—an inference which the trier may, but need not accept. . . . It is true that the burden of production of, or going forward with, rebuttal evi-

> dence rests with the defendant since, as is the case in any trial, failure to rebut a prima facie case could result in an adverse decision. But this is not to say that the burden of persuasion of an element of the crime has been shifted to the defendant. . . . It is to say only that the trier can find the government proved the element beyond a reasonable doubt, absent a countervailing explanation by the defendant.

*Raymond, supra*, 396 A.2d at 977. Since the appellant in *Rogers* failed to present any evidence to rebut the statutory presumption, however, *see* 862 A.2d at 937–38, we had no occasion to examine the second and third sentences of § 46–225.02(d).

■ This case presents us with an issue concerning the proper interpretation of the statutory language creating the presumption of willfulness in the context of the rest of the statutory provision, which states that: "This presumption may be rebutted if the obligor was incarcerated, hospitalized, or disabled during the period of nonsupport. These circumstances do not constitute an exhaustive list of circumstances that may be used to rebut the presumption of willfulness." The Council included no language in the statute which explicitly defines "willfulness." However, the listed ways in which to rebut the presumption of willfulness all implicitly point to an inability to pay. Hence, it is reasonable to conclude that the Council meant that as part of its burden to establish willfulness when the defendant relies on an affirmative defense to demonstrate his or her inability to pay, the government must prove an ability to pay or a voluntary impairment of the ability to comply with the court order due, for example, to voluntary unemployment or underemployment. This reading of the statute is consistent with the Eighth Circuit's interpretation of the meaning of "willful" as used in the federal Child Sup-

port Recovery Act of 1992, 18 U.S.C. § 228, discussed in *United States v. Harrison*, 188 F.3d 985 (8 th Cir.1999). There the court said:

> [The statute] imposes criminal penalties on persons who willfully fail to pay child support. To establish a violation of [the statute], the government must show a willful failure to pay a past-due child support obligation. . . . Willfulness "requires proof of an intentional violation of a known legal duty. . . ."
>
> For [the defendant] to have willfully failed to pay his child support obligation, he must have had the ability to pay.

*Id.* at 986–87 (citations omitted).[6] *But see United States v. Mattice*, 186 F.3d 219, 226 (2d Cir.1999) (concerning the same federal Child Support Recovery Act of 1992; "in order to prove that a defendant violated a "known legal duty" to pay child support, the government need only show that the defendant knew he was violating a state court or administrative order imposing a support obligation").

■■■ Contrary to Mr. Warner's argument, the presumption contained in § 46–225.02(d) does not shift the burden of proof on willfulness to the defendant. Rather, § 46–225.02(b)(1) places the burden to show willfulness on the government, but permits the defendant to assert an affirmative defense. Thus, consistent with our approach in *Rogers* and *Raymond, supra*, under our interpretation of D.C.Code § 46–225.02, the government benefits from and is entitled to a presumption of willfulness under the statute. The government's *prima facie* case may consist of proof of a court order to pay child support and a failure to make payments in accordance with the order. The defendant then has the burden of production or, as we said in *Raymond*, "going forward with[ ] rebuttal evidence," 396 A.2d at 977, or an affirmative defense of inability to pay due to such circumstances as incarceration, hospitalization, or disability. If the defendant presents "a countervailing explanation," *Rogers, supra*, 862 A.2d at 938, the government, as usual, bears the burden of persuasion and must show that the defendant has an ability to pay or voluntary unemployment or underemployment.[7]

---

6. The Council's implicit recognition of proof of the ability to pay, in addition to knowledge of illegality, as part of the government's burden to show willfulness distinguishes our statute from the federal firearms statute construed in *Dixon v. United States*, —— U.S. ——, 126 S.Ct. 2437, 165 L.Ed.2d 299 (2006) (citation omitted), a case in which the "petitioner contend[ed] that her defense [duress] 'controverted the *mens area* required for conviction' and therefore that the Due Process Clause requires the Government to retain the burden of persuasion on that element." *Id.* at 2441. There, the Supreme Court detected no sign that Congress meant more than knowledge of illegality in using the term "willfully": "[T]he term 'willfully' . . . requires a defendant to have 'acted with knowledge that his conduct was unlawful.' " *Id.*

7. Arguably, there is an alternative interpretation of the statute, but we do not believe that either the language of the statute itself nor its legislative history manifests an intent to shift the burden of proof concerning the affirmative defense to the defendant. Under that interpretation, the statute would be construed as creating a defense of inability to pay independent of the government's burden of proving the element of willfulness, which would place the burden of proof on the defendant. This interpretation arguably could flow from (a) the Council's creation of a contempt sanction in child support cases that is separate and apart from the usual contempt power of the court with its culpable *mens area* requirement, (b) the Council's strong language about the pressing problem of nonpayment of child support orders it was trying to address, and (c) the range of possible sanctions provided for in the statute, some of which are not criminal in nature, *e.g.*, rehabilitation programs. However, we decline to interpret a statute which permits a criminal sanction in this fashion, absent express statutory language or at least strong legislative history

Accordingly, we hold that D.C.Code § 46–225.02 does not unconstitutionally shift the burden of proving willfulness from the government to the defendant, nor did the trial court shift the burden in this case. We further hold that under § 46–225.02, the defendant bears the burden of production, or the presentation of evidence showing an inability to pay, but that, as usual, the government bears the burden of persuasion, that is, the burden of proving willfulness as an element of criminal contempt. Our interpretation is consistent with that of the Supreme Court of New Hampshire in *State v. Wallace,* 136 N.H. 267, 615 A.2d 1243 (1992), also a case involving criminal contempt for failure to make court-ordered child support payments. There the court declared:

> We hold that the inability to comply with the court's order, whether in civil or criminal contempt proceedings, is a defense and, therefore, should be raised by the defendant.... Generally, when a defendant introduces evidence regarding a defense to a criminal offense, the State must disprove that defense beyond a reasonable doubt. Accordingly, once the defendant introduces evidence regarding inability to comply in a criminal contempt proceeding, the burden then shifts to the State to prove beyond a reasonable doubt that the defendant intentionally did not comply with the order. In the support context, intentional noncompliance is evident where the paying spouse has the ability to pay and refuses to comply with the order or voluntarily impairs his or her ability to comply, for example by voluntary unemployment or underemployment.

*Id.* at 1245 (citations omitted).

We were confronted with a similar statutory scheme embodying an affirmative defense in *Hicks v. United States,* 707 A.2d 1301 (D.C.1998) and *Russell v. United States,* 698 A.2d 1007 (D.C.1997), cases involving The Anti–Sexual Abuse Act of 1994, which replaced the then-existing rape and other statutes relating to unlawful sexual acts with four degrees of felony sexual abuse and one misdemeanor sexual abuse offense. In addition to specifying the elements of the various felony and misdemeanor sexual abuse offenses, the Act "create[d] affirmative defenses which the defendant must prove by a preponderance of the evidence, to certain of the offenses." *Russell, supra,* 698 A.2d at 1009 (citations omitted). One such affirmative defense is consent. *See* D.C.Code § 22–4107 (2001). The appellant in *Hicks, supra,* challenged his conviction on the ground that during its instructions to the jury, the trial court unconstitutionally shifted the burden of proof to him on the element of force, an element which the government was required to prove as part of its prima facie case. Defense counsel took the position at trial that the defendant's evidence of consent rebutted the element of force, and "the burden is back to the United States to prove beyond a reasonable doubt that [the sexual contact] was not consensual." *Id.* at 1304. We held that, as in *Russell,* the court's instructions had unconstitutionally shifted the burden of proof to the defendant and did not allow the jury to take evidence of the affirmative defense of consent into account in deciding whether the government had proved the element of force beyond a reasonable doubt. *Id.* at 1304; *see Russell, supra,* 698 A.2d at 1013 (D.C.1997) ("[W]e think the Supreme Court made it quite clear that when a defendant raises an affir-

showing a legislative intent to require the defendant to shoulder the burden of proving an affirmative defense, rather than requiring the government to disprove that defense beyond a reasonable doubt.

mative defense, and evidence has been presented by either the defendant or the government which is relevant to that defense, the jury must be free to consider the evidence, unless the legislature has properly provided otherwise, in connection with its determination whether the government has proven the elements of the offense beyond a reasonable doubt.") (citing *Martin v. Ohio*, 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987)). Notably, we did not say either in *Hicks* or *Russell* that the statute relieved the government of the burden of persuasion.

 Here, the trial court manifested its understanding that the burden of proof was on the government to establish all of the elements of the criminal contempt violation beyond a reasonable doubt, and that the statutory presumption of willfulness allowed the government to establish its *prima facie* case under D.C.Code § 46–225.02 by showing initially that Mr. Warner had knowledge of the court order to make specified child support payments and that he failed to comply with the order. At the government's request, the trial court took judicial notice of the permanent May 11, 1987 order, requiring Mr. Warner to pay $118.60 bi-weekly in child support, and the government introduced finance records evidencing a $38,010.22 arrearage in child support, which not only proved that Mr. Warner had knowledge of the court order, but also that he has failed to obey the order to pay. This evidence triggered the statutory presumption of willfulness, but did not necessarily end the government's burden to prove willfulness. At that point, Mr. Warner had the burden of production, and could meet his burden by going forward with evidence of his inability to pay. Unlike the defendant in *Rogers, supra*, who presented no evidence of an inability to pay, Mr. Warner took the witness stand and testified that he could not

make the required payments because he could not work due to incarceration, asthma, a prior drug conviction, a bad knee, and his need to care for his blind mother. Hence, he presented an affirmative defense of inability to pay. The government then had to satisfy its burden of persuasion on willfulness by showing Mr. Warner's ability to pay the court-ordered child support or voluntary unemployment or underemployment.

The government met its burden of persuasion by presenting and confronting Mr. Warner on cross-examination with (a) a document showing that he worked from June 2002 to February 2003 at Day Care, Inc.; (b) evidence that he filed an income tax return in 2002 (he admitted that his tax refund was intercepted for child support); (c) one of his employment applications showing that he was employed by Montgomery County from March 2003 to August 2003; and (d) by generally discrediting Mr. Warner's direct testimony that he did not work, or worked only a couple of days in Montgomery County for Parks and Planning, that his asthma prevented him from working even though he acknowledged that he used Albuterol to manage his asthma, and that his knee prevented him from working (he acknowledged that it only "prevents [him] from standing a long period of time"). Moreover, as additional proof of willfulness, at the request of the government, the trial court took judicial notice that Mr. Warner had been found in civil contempt seven times due to his non-payment of child support as required by the 1987 court order.

As we have indicated, although Mr. Warner raised an affirmative defense of inability to work and pay due to incarceration, asthma, a prior drug conviction, a bad knee, and the need to take care of his blind mother, the burden of proof on the element of willfulness remained at all times

with the government. The trial court found that the government had satisfied its burden to prove willfulness. The court concluded that Mr. Warner had knowledge of the court-ordered child support payments, and that "while his prior conviction so long ago [in 1985] may have prevented one employer from hiring [him], there's no record to indicate that that is the thing that holds him back. He has work." As the trial court ascertained, the evidence revealed that Mr. Warner was incarcerated on one civil contempt finding only for the period of November 2002 to January 2003. Moreover, the evidence did not show clearly that he spent any time in jail for his 1985 marijuana offense. And, the trial court found, neither his asthma nor his knee prevented him from working. Significantly, the trial court discredited Mr. Warner's testimony. Consequently, contrary to Mr. Warner's claim that the evidence was insufficient to support his criminal contempt conviction beyond a reasonable doubt, we conclude that the trial court correctly found that the government sustained its burden of proof. As the trial court declared: "The government has established knowledge and willfulness beyond a reasonable doubt and therefore I find [Mr. Warner] guilty of criminal contempt." Under the totality of the circumstances presented in this case, Mr. Warner is "the truly recalcitrant obligor" that D.C.Code § 46–225.02 was designed to reach. There is no due process infirmity either in the statute under which he was convicted, or in the proof supporting his conviction.

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*

---

8. In *Langley,* the father was conditionally imprisoned for *civil* contempt, but the liberty

SCHWELB, Senior Judge, concurring:

THE LAW, IN ITS MAJESTIC EQUALITY, FORBIDS THE RICH AS WELL AS THE POOR TO SLEEP UNDER BRIDGES, TO BEG IN THE STREETS, AND TO STEAL BREAD.

ANATOLE FRANCE, LE LYS ROUGE, ch. 7 (1894).

**I.**

I concur in the judgment and, for the most part, in the opinion of the court. I write separately, however, because cases like this one implicate the liberty of the citizen and present a significant risk that a non-custodial parent will face imprisonment on account of poverty. The statute on which the court bases its affirmance of the judgment provides that knowing non-payment of child support is *prima facie* evidence of willfulness, but it does not create a mandatory presumption; it is therefore constitutional. If carried too far, however, reliance on such a statute can result in the incarceration of an impoverished non-custodial parent on account of his or her poverty, without proof of an intent to violate a child support order. Such a consequence is legally and constitutionally unacceptable.

As in civil contempt proceedings, "[s]erious liberty interests [are] at stake, and the outcome of . . . contempt in child support proceedings should not be in practical effect imprisonment for debt." *Langley v. Kornegay,* 620 A.2d 865, 868 (D.C.1993).[8] If David Warner were a rich man, or even a member of the middle class, I think it unlikely that he would have wound up in prison for non-payment of child support. Although, in light of the trial judge's credibility findings, I cannot fault the court's affirmance of Warner's conviction, I think it appropriate to emphasize that incarceration for non-payment of child support can-

---

interests implicated in prosecutions for criminal contempt are just as compelling.

not be automatic, that it should be a last resort, and that it may not lawfully be imposed in the absence of proof that there has been an intentional refusal on the part of the non-custodial parent to comply with an order of the court.

## II.

Warner appeals from his conviction of criminal contempt. As the District of Columbia acknowledges in its brief,

> [t]he elements of criminal contempt are (1) willful disobedience (2) of a court order (3) causing an obstruction of the orderly administration of justice.... The offense requires both a contemptuous act *and a wrongful state of mind.*

*Fields v. United States,* 793 A.2d 1260, 1264 (D.C.2002) (emphasis added; citations omitted). In other words, in order to secure a conviction of criminal contempt, the prosecution must prove that the contemnor is at fault; poverty, without more, is a misfortune, not a crime. Important as the enforcement of child support against recalcitrant non-custodial parents is—and I harbor no illusions about the irresponsibility and even heartlessness of at least some purportedly "deadbeat dads"[9]—courts may not lawfully disregard the critical difference between the intentional defiance of a court order on the one hand and genuine inability to comply with it on the other.

Because the contemnor's disobedience must be "willful," and because he must be shown to have acted with a "wrongful state of mind," a court may adjudicate the contemnor in contempt, whether civil or criminal, if (and only if) the contemnor has the ability to comply with the order of support. *Desai v. Fore,* 711 A.2d 822, 825–26 (D.C. 1998); *Lopez v. Ysla,* 733 A.2d 330, 334–35

(D.C.1999). This does not mean, however, that a non-custodial parent may intentionally reduce his ability to support his child and then plead his self-imposed poverty as an excuse. The ability to pay "is not merely a function of actual earnings but is to be derived, more broadly, from earning capacity in the current job market, given one's educational background and work experience." *Smith v. Smith,* 427 A.2d 928, 932 (D.C.1981) (citation omitted); *Lopez,* 733 A.2d at 335. The following passage construing the federal Child Support Recovery Act (CSRA), 18 U.S.C. § 228, is equally germane in the present context:

> The district court did not find that Ballek failed to seek employment as a contractor so that he would be unable to meet his support obligation, but this does not render the finding of willfulness insufficient. The government need not prove that defendant's failure to accept gainful employment was caused by a desire to withhold payments from the spouse and children, or any similar evil motive. *Cf. United States v. Pomponio,* 429 U.S. 10, 12, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976) (per curiam) (requisite motive for willful tax violation is intentional violation of known legal duty). It is just as much a violation of the CSRA for a non-custodial parent to fail to pay child support where his refusal to work is motivated by sloth, a change of lifestyles or pursuit of new career objectives. For most people, bringing children into the world does limit life choices by imposing certain long-term financial obligations. A parent with minor children at home cannot quit work and become a hobo or go back to school as the fancy moves him. Nor may a non-custodial parent

9. I recall a case from my days on the trial court in which a father claimed to be able to pay a certain amount per month in child support, and no more. Examination of his financial statement revealed that his monthly car payment was more than twice what he said he could afford to pay each month to support his own son.

stop making child support payments because he has decided to pursue a post-doctoral degree in macrobiotics. A parent who is subject to an order for child support must seek a modification of the order before making such a lifestyle change. The family court judge can then determine whether such a change is consistent with the parent's prior obligation to support the children. Where a parent does not seek such a modification, but chooses (for whatever reason) to eschew work that is otherwise available, he is subject to imprisonment for failure to pay, both under state law and under the CSRA.

*United States v. Ballek,* 170 F.3d 871, 875 (9th Cir.1999) (Kozinski, J.).

The obligation of a non-custodial parent to do all that he or she reasonably can to earn enough to comply with a child support order does not differ materially from the responsibilities of any citizen who is subject to an injunction or similar judicial command. We summarized the applicable principles in *D.D. v. M.T.,* 550 A.2d 37 (D.C.1988):

> Courts have a right to demand, and do insist upon, full and unstinting compliance with their commands. One who is subject to a court order has the obligation to obey it honestly and fairly, and to take all necessary steps to render it effective. *Village of Great Neck Estates v. Rose,* 279 A.D. 671, 108 N.Y.S.2d 95, 97 (2d Dept.1951), *appeal dismissed,* 303 N.Y. 904, 105 N.E.2d 491 (1951 [1952]). He or she may not do the prohibited thing, nor permit it to be done by his or her connivance. *Roehl v. Public Utility Dist. No. 1 of Chelan County,* 43 Wash.2d 214, 261 P.2d 92, 101 (1953) (en banc). Indeed, he or she must be dili-

gent and energetic in carrying out the orders of the court, *Swift v. Blum,* 502 F.Supp. 1140, 1143 (S.D.N.Y.1980), and a token effort to comply will not do. *Sound Storm Enterprises, Inc. v. Keefe,* 209 N.W.2d 560, 568 (Iowa 1973).

*Id.* at 44.

This affirmative obligation is of particular importance where, as in this case, the purpose of the court's order is to protect the interests of a child. "[O]ne of the most important and sensitive exercises of the police power [is to] ensur[e] that persons too young to take care of themselves can count on both their parents for material support." *Ballek,* 170 F.3d at 875. Courts have no obligation to be unduly tender-hearted vis-a-vis those non-custodial parents who either refuse to pay what they can or who plead inability to pay when that inability is self-imposed. *Cf. Glus v. Brooklyn E. Dist. Terminal,* 359 U.S. 231, 232, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959) ("no man may take advantage of his own wrong"); *Marboah v. Ackerman,* 877 A.2d 1052, 1053 (D.C.2005) (quoting *Glus*).

In the present case, the trial judge apparently found that Warner refused to work when he could have worked. Although the proof that this failure was intentional was perhaps less than overwhelming,[10] I cannot say that there was no evidence to support the finding. Thus, although the record does not reflect that the judge or the District focused on the difference between a culpable refusal to pay and genuine inability to do so as carefully as they might have done, I discern no basis for reversal.

### III.

The District and the trial judge relied upon D.C.Code § 46–225.02(d) (2001), which provides:

10. Warner has previously been held in civil contempt on several occasions, but the record does not reveal his circumstances or ability to pay when he was so adjudicated. *Cf. Langley,* 620 A.2d at 868.

For purposes of this section, failure to pay child support, as ordered, shall constitute *prima facie* evidence of a willful violation. This presumption may be rebutted if the obligor was incarcerated, hospitalized, or disabled during the period of nonsupport. These circumstances do not constitute an exhaustive list of circumstances that may be used to rebut the presumption of willfulness.

Warner contends that this provision deprives him of liberty without due process of law, by shifting to the defendant the burden of proof in a prosecution for criminal contempt. The opinion of the court rejects this contention, and I agree with our disposition. A concern for the liberty interests at stake, however, leads me to add a few observations.

First, in order to avoid serious constitutional questions, we should construe the statute, according to its terms, as creating a permissive presumption or inference rather than a mandatory presumption. Section 46–225.02(d) states that failure to pay child support is *"prima facie* evidence of a willful violation." In the next sentence, however, it refers to a presumption rather than to a *prima facie* case—the change in terminology is unexplained—and it does not specify whether any presumption is mandatory or permissive. For the reasons described below, this issue is of constitutional significance, and thus of critical importance.

In *Francis v. Franklin,* 471 U.S. 307, 314, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), the Supreme Court described the difference between a mandatory presumption and a permissive inference: "A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw the conclusion." That a mandatory presumption is rebuttable does not alter the analysis, for any mandatory presumption, rebuttable or not, *"requires* the jury to find the presumed element unless the defendant persuades the jury that such a finding is unwarranted." *Id.* at 314 n. 2, 105 S.Ct. 1965 (emphasis added). While "[m]andatory presumptions ... violate the Due Process Clause if they relieve the State of the burden of persuasion on an element of the offense," a "permissive inference does not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts." *Id.* at 314, 105 S.Ct. 1965. In *Francis,* the Court concluded that the challenged jury instruction created a mandatory presumption, and that it was therefore unconstitutional.

In *Virgin Islands v. Parrilla,* 7 F.3d 1097, 1100 (3d Cir.1993), the court considered a statute that provided that "infliction of injury is presumptive evidence of the intent [to commit mayhem]." On "plain error" review, the court held the statute unconstitutional because there was no substantial certainty of a significant connection between the predicate fact (the injury) and the presumed fact (intent to commit mayhem). The court first determined, based on the definitive language of the statute—infliction of injury *is* presumptive evidence of intent—that the presumption was mandatory. Turning to the "soundness of the presumption," 7 F.3d at 1103, *i.e.,* that "the likelihood in the normal course of events that the presumed fact ... will flow from the proven fact," *id.* at 1104, the court concluded that the connection was not substantially certain, and that the mandatory presumption of intent to commit mayhem rendered the statute unconstitutional.

The reasoning of the court in *Parrilla* applies with equal force here. First, as we have noted, the statute provides that failure to pay child support shall constitute *"prima facie evidence"* of willfulness. This is hardly the language of a mandatory presumption, even though the word "presumption" is used in the sentence that follows. Moreover, if we were to construe § 46–225.02(d), notwithstanding the italicized language, as creating a mandatory presumption, it would have the same vice as the statute held invalid in *Parrilla*. There are doubtless many instances in which the predicate fact (failure to pay court-ordered child support) is closely connected to the presumed fact (willfulness). But there are circumstances other than willfulness that may often contribute to a failure to pay, and we cannot be substantially certain, based on non-payment alone, that the failure was willful. At the very least, if we were to construe the statute as creating a mandatory presumption, there would be a serious question as to its constitutionality. "[A] statute should be interpreted, if fairly possible, in such a way as to free it from not insubstantial constitutional doubts." *Lynch v. Overholser,* 369 U.S. 705, 711, 82 S.Ct. 1063, 8 L.Ed.2d 211 (1962); *Owens–Corning Fiberglas Corp. v. Henkel,* 689 A.2d 1224, 1234 (D.C.1997).

In *Rogers v. Johnson,* 862 A.2d 934, 938 (D.C.2004), in construing Section 46–225.02(d)—the very provision at issue here—we treated the statute as creating a *prima facie* case, and thus a permissive inference rather than a mandatory presumption. Quoting *Raymond v. United States,* 396 A.2d 975, 977 (D.C.1979), we stated that a defendant's "failure to rebut a *prima facie* case *could* result in an adverse decision to him or her." *Id.* (emphasis added; brackets omitted). If the *prima facie* evidence language in the statute had created a mandatory presumption, then the appropriate word would have been "would," not "could." By holding that any inference in the statute is permissive, we assure its constitutionality.

Because the court does not construe the statute as creating a mandatory presumption, I discern no constitutional difficulty with our holding that inability to pay is an affirmative defense. Courts in other jurisdictions have also held that ability to pay child support is not an element of criminal contempt, and that the contemnor must assert inability to pay as an affirmative defense. *See, e.g., State ex rel Mikkelsen v. Hill,* 315 Or. 452, 847 P.2d 402 (1993) (concluding that a statute which creates an affirmative defense of inability to pay does not unconstitutionally shift the burden of persuasion); [11] *State v. Wallace,* 136 N.H. 267, 615 A.2d 1243, 1245 (1992) (holding that inability to pay is an affirmative defense, but explaining that if the defendant raises the issue, the burden shifts to the state to prove ability to pay); *Mayo v. Mayo,* 173 Vt. 459, 786 A.2d 401, 406 (2001) (concluding that the burden is on

---

11. The court in *Mikkelsen* also stated:

In the absence of an appeal of a support order or a motion to modify the support order, a court permissibly may infer that a parent who was ordered to pay support previously had the ability to pay and continues to have the ability to pay.

847 P.2d at 406. I have no quarrel with this statement as an abstract proposition. If, however, the contemnor is not well-educated and has not had the continuous assistance of counsel, I do not believe that he or she should face incarceration for criminal contempt simply because he or she failed to take measures to seek reduction of his or her child support obligation, even if the necessity of such measures would doubtless seem obvious to a competent attorney. Moreover, orders determining the amount of child support that a non-custodial parent is able to pay are issued without any requirement that ability to pay be proved beyond a reasonable doubt.

the defendant to show inability to pay);[12] *Ex parte Roosth*, 881 S.W.2d 300 (Tex. 1994) (holding that inability to pay is an affirmative defense). *See also Dorsey v. State*, 356 Md. 324, 739 A.2d 41, 56 (1999) (explaining that ability to pay is not an element of criminal contempt, but holding that the state must nevertheless prove *mens rea*).

As I have previously noted, a wrongful state of mind is an element of criminal contempt. *Fields*, 793 A.2d at 1264. In order to reconcile the recognition of this element of the offense with the treatment of inability to pay as an affirmative defense, I would approach the issue in the way that the Supreme Court of New Hampshire did in *Wallace*, quoted *ante* maj. op. at 241, and I am glad that my colleagues have done the same. I emphasize, in particular, that "[i]n the support context, intentional noncompliance is evident where the paying spouse has the ability to pay and refuses to comply with the order or voluntarily impairs his or her ability to comply, for example by voluntary unemployment or underemployment." *State v. Wallace*, 615 A.2d at 1245.

## IV.

In light of the potential of prosecutions such as this one to implicate important liberty interests, I think it appropriate to conclude this concurring opinion by stating my understanding of what has *not* been decided in this case.

Many if not most non-custodial parents who have failed to comply with their child support obligations are likely to be non-affluent, and they may often have other debts as well. Some of these debts may be for the necessities of life. A father who owes child support may be behind in his rent and, if he fails to pay rent, he may face eviction and homelessness. Payment of the full child support obligation may leave a non-custodial parent without enough money to buy food or basic clothing, or to afford transportation to seek employment (or, if the parent has a job, to travel to his or her place of employment). He or she, or dependents residing with him or her, may face critical health problems.

In the present case, Warner—who was more than $38,000 in arrears with respect to his child support obligation—was ordered, as a part of his sentence, to pay $50.00 to the Victims of Violent Crimes Compensation Fund (VVCCF). This order, too, is presumably enforceable by criminal contempt. At least theoretically, the simultaneous obligation to pay child support and victim compensation could put Warner between a rock and a hard place; if he paid $50.00 in conformity with one court order, he could be prosecuted for criminal contempt for not complying with the other. Surely, however, a person should not be incarcerated because he or she paid the wrong creditor, especially (but not only) if that creditor is armed with a court order.

At least as I understand the opinion of the court, we have decided nothing in this case regarding priority of obligations. We likewise have not ruled whether a non-custodial parent is guilty of criminal contempt if he or she fails to comply with a support order solely to avoid hunger or homelessness. I return to the words of Anatole France with which I began this

12. In *Mayo*, however, the court also stated:
Contempt by its very nature is inapplicable to one who is powerless to comply with the court order. It would be utilized against only that person who, being able to comply, contumaciously disobeys, or refuses to abide by, the court order.
*Id.* (quoting *Spabile v. Hunt*, 134 Vt. 332, 360 A.2d 51, 52 (1976)).

opinion, and I express the hope that issues that remain open, such as those discussed above, will be resolved in a reasonable and humane way which accommodates both the child's need for support and the liberty interest of the parent. In this progressive capital of a democratic nation, we cannot tolerate a system which condemns a citizen to imprisonment on account of poverty rather than fault. There can be no *de facto* debtors' prisons for citizens of the District of Columbia.