*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

## Nos. 21-CV-34, 21-CV-35, 21-CV-36, & 21-CV-37

DISTRICT OF COLUMBIA,
APPELLANT,

V.

KAREN TOWERS, ET AL.,
APPELLEES.

Appeals from the Superior Court
of the District of Columbia
(LTB-6315-20, LTB-6637-20, LTB 6770-20, LTB-8032-20)

(Hon. Anthony C. Epstein, Trial Judge)

(Argued September 16, 2021                    Decided October 7, 2021)

*Megan D. Browder*, Assistant Attorney General, with whom *Karl Racine*, Attorney General, *Loren L. AliKhan*, Solicitor General, *Caroline S. Van Zile*, Principal Deputy Solicitor General, and *Ashwin P. Phatak*, Deputy Solicitor General, were on the brief, for appellant.

*Ian A. Williams*, with whom *Gary D. Wright*, was on the brief, for appellee Borger Management, Inc.

*Alexander Gallo*, pro se.

*Amanda Korber*, with whom *Rebecca Lindhurst, Beth Mellen, Lori Leibowitz, Gabriella Lewis-White, Gwendolyn M. Washington, Nathaniel Aquino,* and *Lucy Newton* were on the brief, for Bread for the City, Legal Aid Society of the District of Columbia, Neighborhood Legal Services Program, The D.C. Bar Pro Bono

Center, Legal Counsel for the Elderly, and Rising for Justice, *amici curiae*, in support of appellant.

Before GLICKMAN, EASTERLY, and DEAHL, *Associate Judges*.

GLICKMAN, *Associate Judge*: These consolidated appeals are from the Superior Court's declaratory judgment that the District of Columbia's statutory moratorium on filing for eviction during the COVID-19 public health emergency and for a limited period thereafter violates property owners' constitutional right to access the courts. While the basis of the constitutional right of access to the courts remains unsettled, the Supreme Court has held that the right "assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights."[1]

Here, property owners argue that their right of access to the courts is violated when they are deprived of an expedited process for repossessing property through an eviction action. The Superior Court agreed, declaring that the filing moratorium "directly implicates property owners' constitutionally based interest in expeditious resolution of eviction cases." Because there is no constitutional right to eviction on a specific timetable, much less a fundamental one, we conclude that the temporary filing moratorium does not burden the right of access to the courts. The filing

---

[1] *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974).

moratorium perhaps could be challenged on other grounds, but because the Superior Court's judgment rested solely on its holding that the filing moratorium violates the right of access to the courts, our focus on appeal is similarly limited.

## I.

On March 11, 2020, the Mayor of the District of Columbia, pursuant to her authority under the Home Rule Act,[2] issued a declaration of a public health emergency in response to the COVID-19 pandemic.[3] Soon after, on March 17, 2020, the Council of the District of Columbia enacted a variety of measures to prevent the spread of COVID-19 and protect District residents.[4] Included among these measures was a moratorium on evictions "[d]uring a period of time for which the Mayor has declared a public health emergency" ("eviction moratorium").[5] As the pandemic continued throughout the spring, the Mayor and the Council acted again. On May

---

[2] D.C. Code § 1-201.01 et seq. (2016 Repl.).

[3] Executive Office of the Mayor, Mayor's Order 2020-45: Declaration of Public Health Emergency: Coronavirus (COVID-19) (March 11, 2020), https://mayor.dc.gov/release/mayor%E2%80%99s-order-2020-045-declaration-public-health-emergency-coronavirus-covid-19; https://perma.cc/JMP9-LARN.

[4] D.C. Act 23-247 § 308, 67 D.C. Reg. 3093 (Mar. 17, 2020); D.C. Code § 42-3505.01(k)(3) (2020 Repl.).

[5] *Id.*

13, 2020, the Mayor signed the Coronavirus Omnibus Emergency Amendment Act of 2020.[6] This emergency legislation prohibited landlords from filing actions for possession of real property pursuant to D.C. Code § 16-1501 (2012 Repl.) during the public health emergency and for sixty days thereafter ("filing moratorium"), and applied retroactively as of March 11, 2020.[7]

In July 2020, the Superior Court began issuing orders in all filed possession cases to show cause why the cases should not be dismissed. On July 28, 2020, Judge Epstein was assigned to adjudicate all common questions of law relating to the filing moratorium for eviction cases filed on or after March 11, 2020. The trial court selected multiple cases filed between March and September 2020 to consider facial challenges to the legality of the filing moratorium, including whether the filing moratorium violated the constitutional rights of landlords by restricting their access to the courts. In November 2020, the District intervened to defend the constitutionality of the law. A group of legal service providers, appearing as amici, also supported the moratorium.

---

[6] D.C. Act 23-317, 67 D.C. Reg. 5235 (May 13, 2020).

[7] *Id.*

On December 16, 2020, the Superior Court held that the moratorium on eviction filings for the duration of the public health emergency, plus sixty days thereafter, was unconstitutional. Specifically, it held that the moratorium infringed on property owners' fundamental right of access to the courts because "[a] landlord's interest in summary resolution of its claims against a tenant has a constitutional basis." Applying intermediate scrutiny, the court concluded that the filing moratorium did not survive such review. Accordingly, the court issued a declaratory judgment that the filing moratorium was unconstitutional and directed the clerk to "schedule initial hearings in any pending case filed on or after March 11, 2020 as soon as reasonably possible."

The District of Columbia timely appealed and moved for a stay pending appeal. On May 13, 2021, this court granted the District's motion.[8] The panel concluded that: (1) the District was likely to succeed on appeal because the filing moratorium did not implicate the right of access to the courts,[9] (2) the District had

---

[8] *District of Columbia v. Towers*, 250 A.3d 1048, 1056 (D.C. 2021).

[9] *Id.* at 1054-56.

demonstrated a risk of irreparable harm to tenants without a stay,[10] (3) the countervailing harm to property owners was not irreparable,[11] and (4) the public interest favored a stay because the filing moratorium was a component of the Council's comprehensive response to a public health emergency.[12]

Approximately two months later, on July 24, 2021, the Mayor signed an executive order ending the public health emergency as of July 25, 2021, and signed into law D.C. Act 24-125, the Public Emergency Extension and Eviction and Utility Moratorium Phasing Emergency Amendment Act of 2021.[13] The legislation phases out many of the tenant protections enacted during the COVID-19 public health

---

[10] *Id.* at 1056-57 (citing *Akassy v. William Penn Apartments Ltd. P'ship*, 891 A.2d 291, 309 (D.C. 2006)) ("[T]he upheaval of a tenant from his home, even if he can find alternative housing, creates a cognizable irreparable injury.").

[11] *Id.* at 1059 ("Mere injuries, however substantial, in terms of money. . . necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim o[f] irreparable harm." (quoting *Zirkle v. District of Columbia*, 830 A.2d 1250, 1257 (D.C. 2003))).

[12] *Id.* ("The filing moratorium is one component of the Council's comprehensive response to the COVID-19 public health emergency and its financial fallout. While the courts have an important role to play in ensuring that the District does not wield its police powers in an unconstitutional or illegal manner, we are not legislators elected to make difficult policy decisions with potentially life or death consequences.").

[13] D.C. Act 24-125, 68 D.C. Reg. 7342 (July 30, 2021).

emergency. For example, as of August 24, 2021, property owners have been permitted to file eviction cases in Superior Court when a tenant's continuing presence is a threat to health and safety or when the tenant has willfully or wantonly caused significant damage to the property.[14] As of October 12, 2021, landlords may file eviction actions for nonpayment of rent, provided the tenant owes at least $600 in rent, and the landlord has applied for relief through the District's rental assistance program Stronger Together by Assisting You (STAY) DC.[15] Starting January 1, 2022, landlords may file eviction actions for any of the ten lawful bases for eviction in the District.[16]

## II.

The Superior Court held that "[t]he United States Constitution protects the right of property owners to go to court to regain possession of their property in a summary proceeding." Finding that the District's filing moratorium "den[ied] property owners their day in court for an extended and indefinite period," the court agreed with appellees that their right of access to the court was violated when they

---

[14] *See* D.C. Code § 16-1501(c)(1).

[15] *Id.*

[16] *Id.*; D.C. Code § 42-3505.01 (2020 Repl.).

were prevented from filing complaints for possession during the COVID-19 health emergency and for sixty days after. We review a challenge to the constitutionality of a statute de novo.[17]

Though the Supreme Court has identified the right of access to courts as stemming from multiple sources, it has largely grounded its analysis of that right in the Due Process Clauses of the Fifth and Fourteenth Amendments.[18] When considering a right of access claim in *Boddie v. Connecticut*, the Supreme Court cited due process as requiring that "persons forced to settle their claims of right and duty through the judicial process . . . be given a meaningful opportunity to be heard."[19] There, the Court held that the due process right of access to the courts was violated where Connecticut's filing fees for divorce proceedings completely prevented indigent plaintiffs from exercising a fundamental right, as access to the

---

[17] *In re Warner*, 905 A.2d 233, 237-38 (D.C. 2006).

[18] *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002) (citing *Walters v. National Assn. of Radiation Survivors*, 473 U.S. 305, 335 (1985); *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974); *Boddie v. Connecticut*, 401 U.S. 371, 380-81 780 (1971)); *see also Ortwein v. Schwab*, 410 U.S. 656, 660 n.5 (1973) ("Appellants also claim a violation of their First Amendment right to petition for redress. Our discussion of the Due Process Clause, however, demonstrates that appellants' rights under the First Amendment have been fully satisfied.").

[19] 401 U.S. at 377.

courts was the "exclusive precondition to the adjustment of a fundamental human relationship."[20]

Two years later, in *United States v. Kras*, the Supreme Court held that the right of access to the courts was not implicated when the underlying claim did not involve a fundamental interest.[21] The interest at stake in *Kras* was the elimination of debt through bankruptcy, which did "not rise to the same constitutional level," as claims for divorce.[22] Noting that the denial of access to the courts in *Boddie* directly affected interests of fundamental constitutional importance, namely, the marital relationship and the associational interests surrounding it, the Court concluded Kras stood in a materially different posture because "no fundamental interest. . . is gained or lost depending on the availability of a discharge in bankruptcy."[23]

---

[20] *Id.* at 383.

[21] 409 U.S. 434, 445 (1973).

[22] *Id.* at 444. *See also Ortwein*, 410 U.S. at 659 (holding appellants were not deprived of due process by state appellate court filing fee, as the increase in welfare payments sought by them had less constitutional significance than the interest of appellants in *Boddie*).

[23] *Kras*, 409 U.S. at 445.

In 1975, the Supreme Court again distinguished *Boddie* where an Iowa statute required one year of residency in the state as a precondition to filing for divorce.[24] While the filing fees in Connecticut served to "exclude forever a certain segment of the population from obtaining a divorce,"[25] the right of access to the courts was not similarly violated where the "claim [wa]s not total deprivation, as in *Boddie*, but only delay."[26] Instead, where appellant "would eventually qualify for the same sort of adjudication" sought, delayed access to the courts was constitutional, even where a fundamental right was involved.[27]

Since then, the Supreme Court has further clarified that the right of access to the courts "is ancillary to the underlying claim," such that "the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong."[28] Taken together, this line

---

[24] *Sosna v. Iowa*, 419 U.S. 393, 406 (1975).

[25] *Id.* at 409; *see also Boddie*, 401 U.S. at 372-73 ("The affidavits in the record establish that appellants' welfare income in each instance barely suffice to meet the costs of the daily essentials of life and includes no allotment that could be budgeted for the expense to gain access to the courts in order to obtain a divorce.").

[26] *Sosna*, 419 U.S. at 410.

[27] *Id.* at 406.

[28] *Harbury*, 536 U.S. at 414-15.

of cases reinforces that the right of access to the courts serves to "assure[] that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights."[29]

Appellee Borger Management argues the filing moratorium violates a fundamental right under the Constitution because it abridges private parties' right to contract. This argument might have more force if the moratorium totally deprived property owners of access to the courts, instead of only temporarily delaying such access. But the Supreme Court previously has upheld legislation temporarily (though significantly) delaying tenant evictions during an emergency, stating, "[a] limit in time, to tide over a passing trouble, well may justify a law that could not be upheld as a permanent change."[30] The District's temporary filing moratorium does not eliminate tenants' lease obligations, including the payment of rent, or alter property owners' title to their property. After the moratorium is lifted, property owners will be able to file for eviction and pursue related claims. Therefore, the filing moratorium involves no abrogation of contracts or deprivation of the ability to file for eviction.

---

[29] *Wolff*, 418 U.S. at 579.

[30] *Block v. Hirsh*, 256 U.S. 135, 157 (1921) (upholding against constitutional challenge a two-year law prohibiting landlords from evicting tenants after lease expiration during a housing shortage and when lease obligations remained in effect).

As we have noted, the filing moratorium will soon end. By January 1, 2022, all property owners will be able to file suit for possession, with many able to file for possession before then based on non-payment of rent, property damage, or public safety concerns.[31] Just like the emergency tolling of judicial deadlines at issue in *Sharps v. United States*, the premise of the filing moratorium was that proceedings would resume in the foreseeable future, and resumption is at hand.[32] And although appellees complain that they have been deprived, in the meantime, of some interim relief in the form of protective orders requiring payment of rent into the registry of the court, the District has put in place a different mechanism for landlords to obtain interim relief in the form of rental assistance programs, most notably STAY DC.[33] STAY DC allows both renters and property owners to apply for up to twelve months

---

[31] D.C. Code § 16-1501(c)(1).

[32] *Sharps v. United States*, 246 A.3d 1141, 1155 (D.C. 2021) ("Emergency tolling ends when the emergency ends, or is overcome. Even if there may be uncertainty as to when that will happen, the statutory premise is that it *will* happen in the foreseeable future and that trials will then resume.").

[33] By contrast, the Superior Court concluded that "[d]uring the extended period of the filing moratorium, landlords are completely deprived of the ability to obtain any interim protection whatsoever."

of past due rent and up to six months of future rent, and over $350 million has been allocated to the program to mitigate rental housing debt.[34]

## III.

For the foregoing reasons, we do not find a fundamental "constitutional right to evictions on a particular timetable" to support appellees' claim their right of access to the courts is violated by the District's filing moratorium.[35] We reverse the judgment of the Superior Court.

---

[34] Press Release, Executive Office of the Mayor, Mayor Bowser Announces $350 Million Rent and Utility Assistance Program for DC Residents (April 12, 2021), https://mayor.dc.gov/release/mayor-bowser-announces-350-million-rent-and-utility-assistance-program-dc-residents; https://perma.cc/ZSA8-99P3.

[35] *Towers*, 250 A.3d at 1056.